United States District Court
Western District of Texas
Waco Division

| | |
|---|---|
| Affinity Labs of Texas, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MLB Advanced Media, L.P.;<br>MLB Advanced Media, Inc.,<br><br>    Defendants. | Case No. 15-33<br><br>**Jury Trial Demanded** |

## Complaint for Patent Infringement

Plaintiff Affinity Labs of Texas, LLC (Affinity Labs) files this Complaint against Defendants, MLB Advanced Media, L.P., which does business as MLBAM, L.P., and MLB Advanced Media, Inc., which does business as MLBAM, Inc. (collectively, MLB), and alleges as follows:

### Parties

1. Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2. Defendant MLB Advanced Media, L.P. is a Delaware limited partnership with its principal place of business in New York, New York. MLB Advanced Media, L.P. is registered to do business in and actively engaged in business within the State of Texas, and maintains an agent for service of process at CSC Lawyers Inc., 211 E. 7th St. Suite 620, Austin, TX 78701.

3. Defendant MLB Advanced Media, Inc. is a Delaware corporation with its principal place of business in New York, NY. MLB Advanced Media, Inc. is registered to do business in and actively engaged in business within the State of Texas, and maintains an agent for service of process at CSC Lawyers Inc., 211 E. 7th St. Suite 620, Austin, TX 78701.

## Jurisdiction

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

5. This Court has general and specific personal jurisdiction over MLB. MLB has committed and continues to commit acts giving rise to this action within Texas and within this judicial district and MLB has established minimum contacts within the forum such that the exercise of jurisdiction over MLB would not offend traditional notions of fair play and substantial justice. For example, MLB has committed and continues to commit acts of patent infringement in this judicial district, as set forth below. In conducting its business in Texas and this judicial district, MLB derives substantial revenue from its patent infringement.

## Venue

6. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because MLB has committed acts within this judicial district giving rise to this action, and MLB has and continues to conduct business in this judicial district, including one or more acts of using, selling, and offering to sell a broadcast system

that constitutes patent infringement in this judicial district, and providing service and support to MLB's customers in this judicial district.

7. Venue in the Western District of Texas is also proper because Affinity Labs is headquartered in this judicial district in Dripping Springs, Texas.

8. Venue in the Western District of Texas is also proper because the majority of Affinity Labs' documents and relevant evidence is located at Affinity Labs' headquarters within this judicial district and numerous witnesses are also located within this judicial district.

9. Venue in the Western District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

10. Venue in the Western District of Texas is also proper because of judicial economy. The Honorable Judge Walter S. Smith, Jr. in this judicial district is currently presiding over *Affinity Labs of Texas, LLC v. Bosch, LLC*, C.A. No. 6:14-cv-00396, which involves two other Affinity Labs patents in the same patent family as the Asserted Patent in this matter, United States Patent Nos. 8,554,191 (the '191 patent) and 8,588,680 (the '680 patent). Moreover, Magistrate Judge Jeffrey Manske in this judicial district presided over the following seven Affinity Labs matters, which also involved the '191 and '680 patents: *Affinity Labs of Texas, LLC v. Ford Motor Company*, C.A. No. 6:13-cv-00363; *Affinity Labs of Texas, Inc. v. General Motors*, C.A. No. 6:13-cv-00379; *Affinity Labs of Texas, Inc. v. Nissan*, C.A. No. 6:13-cv-00369; *Affinity Labs of Texas, Inc. v. Toyota*, C.A. No. 6:13-cv-00365; *Affinity Labs of Texas, Inc. v. Honda*, C.A. No. 6:13-cv-00367; *Affinity Labs of Texas, Inc. v. Jaguar*, C.A. No. 6:13-cv-00368; and *Affinity Labs of Texas, Inc. v. Volvo*, C.A. No. 6:13-cv-00366.

## Background

11.     Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

12.     Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas A&M. Mr. White also graduated from the University of Temple Law School. After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

13.     Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least thirty-two separate United States patents.

14.     On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 (the '812 application) with the United States Patent and Trademark Office (PTO).

15.     The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device, such as a smartphone, at its center.

16.     The '812 application also disclosed the ability to access regionally broadcast content on a wireless handheld device even when the user and the wireless handheld device were located outside of the range for the regional broadcast.

17.     On June 28, 2011, the PTO issued the '379 patent, entitled "Providing Broadcast Content." A copy of this patent is attached as Exhibit A. The '379 patent was issued from a continuation application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000. The '379 patent is presumed valid, and is valid.

18. The '379 patent and other patents in the same patent family, have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.

19. Numerous other companies have recognized the value and importance of Affinity Labs' innovation. For instance, twenty-eight companies have licensed Affinity Labs' patent portfolio for the patents in the same family as the Asserted Patent.

20. MLB does not have a license to the '379 patent or any patent in Affinity Labs' patent portfolio.

## Count I
### Infringement of U.S. Patent No. 7,970,379 by MLB

21. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

22. Affinity Labs holds all legal title, interest, and rights in the '379 patent.

23. MLB did not and does not have authority to make, use, sell, or offer for sale any system covered by any claim of the '379 patent.

24. MLB has and continues to manufacture, use, sell, and offer to sell, without authority, a broadcast system that includes MLB.TV On the Go and the MLB.com At Bat application.

25. End users and subscribers to MLB.Com Premium have access to MLB games on wireless handheld devices via MLB.TV On the Go and the MLB.com At Bat application.

26. MLB uses and controls a broadcast system to stream and deliver MLB games to its subscribers and end users.

27. As part of its broadcast system, MLB maintains a network based resource, such as a server and electronics infrastructure.

28. MLB's network based resource maintains information regarding regionally broadcast MLB games.

29. MLB's network based resource includes the capability of allowing its subscribers and end users to select among regionally broadcast MLB games.

30. MLB's network based resource includes the capability of streaming regionally broadcast MLB games to a wireless handheld device.

31. Products such as the MLB.TV On the Go and the MLB.com At Bat application allow MLB's end users and subscribers to stream MLB games for viewing on the end users' and subscribers' wireless handheld device.

32. MLB's broadcast system also includes a non-transitory storage medium on which it maintains the MLB.com At Bat application. Upon a request from a user of a wireless handheld device such as a smartphone or tablet, this MLB.com At Bat application can be downloaded from DirecTV's non-transitory storage medium to the wireless handheld device for execution.

33. The MLB.com At Bat application is configured for execution on a wireless handheld device.

34. The MLB.com At Bat application is configured to enable a wireless handheld device to transmit a request for a regionally broadcast MLB game from the wireless handheld device.

35. The MLB.com At Bat application is configured to enable a wireless handheld device to receive a streaming signal of a regionally broadcast MLB game on the

wireless device, even when the wireless handheld device is outside of the region of the regionally broadcast MLB game.

36. The MLB.com At Bat application is capable of being wirelessly downloaded onto a wireless handheld device.

37. In violation of 35 U.S.C. § 271(a), MLB has infringed, and if not enjoined, will continue to infringe the '379 patent by manufacturing, using, selling, and offering to sell, without authority, a broadcast system that includes MLB.TV On the Go and the MLB.com At Bat application, which is covered by one or more claims of the '379 patent, literally and/or under the doctrine of equivalents, in this judicial district and elsewhere in the United States.

38. For example, MLB directly infringes at least claims 1, 5, 7, and 10-13 of the '379 patent at least by having and continuing to make, use, sell, and offer to sell its broadcast system that includes MLB.TV On the Go and the MLB.com At Bat application.

39. MLB has known of the '379 patent since at least March 2013. For instance, Mr. Frost, President of Affinity Labs, wrote MLB's CEO, Bob Bowman, on March 26, 2013. In that letter, Mr. Frost enclosed a copy of the '379 patent because of MLB's mobile products.

40. Despite Affinity Labs' written notice of and MLB's knowledge of the '379 patent, MLB has not stopped its infringement. Instead, MLB continues to make, use, sell, and offer for sale its broadcast system that includes MLB.TV On the Go and the MLB.com At Bat application, which infringes the '379 patent.

41. MLB's infringement of the '379 patent has been and is willful because MLB has known of the '379 patent, knew or was at least reckless with respect to its infringement

of the '379 patent, and yet continues to offer MLB.TV On the Go and the MLB.com At Bat application in at least reckless disregard of Affinity Labs' patent rights.

42. In violation of 35 U.S.C. § 271(b), MLB has indirectly infringed one or more claims of the '379 patent by inducing others (e.g., its subscribers and end users) to directly infringe the '379 patent at least by using MLB.com On the Go and the MLB.com At Bat application in this judicial district and elsewhere in the United States.

43. MLB knowingly encouraged and intended—and continues to encourage and intend—for its subscribers and end users to directly infringe the '379 patent, including at least claims 1, 5, 7, and 10-13 by instructing and advertising that its end users and subscribers stream MLB games on subscribers' and end users' wireless handheld devices. MLB intended these actions by its end users and subscribers while the '379 patent is in force.

44. MLB knew of the '379 patent and knew that its instructions and encouragement, and its continued instruction and encouragement, has and will continue to result in infringement of the '379 patent. MLB, therefore, specifically intended to induce its subscribers and end users to directly infringe the '379 patent when they used its broadcast system that includes MLB.TV On the Go and the MLB.com At Bat application.

45. Alternatively, MLB knew that there was a high probability that the acts by its subscribers and end users would infringe the '379 patent but took deliberate steps to avoid learning of that infringement.

46. In violation of 35 U.S.C. § 271(c), MLB actively contributes to the infringement and actively continues to commit such contributory infringement of the '379 patent in this judicial district and elsewhere.

47. MLB has made, used, sold, and offered for sale, and continues to make, use, sell, and offer to sell MLB.TV On the Go and the MLB.com At Bat application and has and continues to do so while the '379 patent is in force.

48. MLB made, used, sold, and offered for sale, and continues to make, use, sell, and offer for sale at least components of the broadcast system, such as, MLB.TV On the Go and the MLB.com At Bat application, that infringes the '379 patent, and for which no other substantial non-infringing uses exist. These components include a material part of the claimed inventions of the '379 patent. MLB has known that these components are used by its end users and subscribers in a manner that infringes the '379 patent, and continues to offer these components for such use and infringement. Alternatively, MLB knew that there was a high probability that the acts by its subscribers and end users would infringe the '379 patent but took deliberate steps to avoid learning of that infringement.

49. MLB does not have a license or permission to use the claimed subject matter in the '379 patent.

50. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of MLB's infringement of the '379 patent.

51. MLB will continue to infringe the '379 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

52. Affinity Labs is entitled to recover from MLB the damages sustained by Affinity Labs as a result of MLB's wrongful acts in an amount subject to proof at trial.

### Demand for Trial by Jury

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## Prayer for Relief

Plaintiff Affinity Labs prays for the following relief:

1. A declaration that MLB has infringed and is infringing the '379 patent and is liable to Affinity Labs for infringement;

2. An order enjoining MLB from infringing the '379 patent;

3. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as an ongoing royalty;

4. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for MLB's infringement of the '379 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

5. An equitable accounting of damages owed by MLB for the period of infringement of the '379 patent, following the period of damages established by Affinity Labs at trial;

6. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

7. An award of costs, expenses, and disbursements; and

8. Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated: February 3, 2015

Respectfully submitted,

By: /s/ John P. Palmer

**Naman Howell Smith & Lee, PLLC**
John P. Palmer (State Bar No. 15430600)
P.O. Box 1470
Waco, TX 76703-1470
(254) 755-4100
Fax: (254) 754-6331
palmer@namanhowell.com

**Robins Kaplan LLP**
Ronald J. Schutz (MN Bar No. 130849)
(*pro hac vice to be submitted*)
Cyrus A. Morton (MN Bar No. 287325)
(*pro hac vice to be submitted*)
Patrick M. Arenz (MN Bar No. 386537)
(*pro hac vice to be submitted*)
Daniel R. Burgess (MN Bar No. 389976)
(*pro hac vice to be submitted*)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine A. Tietz (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
RSchutz@robinskaplan.com
CMorton@robinskaplan.com
PArenz@robinskaplan.com
DBurgess@robinskaplan.com
SShapiro@robinskaplan.com
KTietz@robinskaplan.com

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## Certificate of Service

I hereby certify that on February 3, 2015, I caused a true and correct copy of this document (Complaint for Patent Infringement) to be served on all counsel of record via Electronic Case Filing (ECF) pursuant to Local Rule CV-5.

Dated: February 3, 2015                          */s/ John P. Palmer*
                                                                             John Palmer